UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| RICHARD ANTONUCCI | |
| Plaintiff, | No. 3:17-CV-01139 (MPS) |
| v. | |
| SMALL BUSINESS ADMINISTRATION, et. al. | |
| Defendants. | |

**Ruling on Motion to Dismiss and Motion for Summary Judgment**

I. **Introduction**

Richard Antonucci appeals a decision by the defendant United States Small Business Administration ("SBA") regarding a wage garnishment action by defendant United States Department of Treasury Bureau of the Fiscal Services ("Treasury"). Mr. Antonucci agreed to guarantee the repayment of a loan in the amount of $430,000.00 for his business. The lender was the Home Loan Investment Bank, F.S.B. ("HLIB"). The loan was secured by a mortgage on real property owned by his business. The SBA in turn guaranteed the loan up to an amount of seventy-five percent of its value. When Mr. Antonucci's business defaulted on the loan, HLIB foreclosed upon the property. The property was eventually sold through a private sale. The net proceeds recovered from that sale did not fully satisfy the delinquent principal and interest on the loan. As a result, the SBA commenced subsequently its own administrative collection action against Antonucci by way of an administrative wage garnishment of Mr. Antonucci's wages.

Mr. Antonucci challenged the garnishment action in an administrative hearing. The hearing officer ruled against him. He appeals that decision in this lawsuit. Now before me is the defendants' motion to dismiss or in the alternative for summary judgment regarding Mr. Antonucci's claims against the Treasury and for summary judgment with respect to his claims

1

against the SBA.[1] (ECF No. 15). For the reasons set forth below, the defendants' motion is granted.

## II.    Background

### A.    SBA Loan and Foreclosure

The following facts, which are taken from the parties' Local Rule 56(a) Statements and the exhibits, are undisputed unless otherwise indicated.

"On or about May 21, 2007, the [SBA] approved and authorized a federally guaranteed small business loan (hereinafter 'the loan')." (ECF No. 15-2, Defendants' Local Rule 56(a)1 Statement ("Def.'s L.R. 56(a)1 Stmt.") at ¶ 1; ECF No. 17-1, Plaintiff's Local Rule 56(a)2 Statement ("Pl.'s L.R. 56(a)2 Stmt.") at ¶ 1.) "The Lender of the loan was [HLIB], and the

---

[1] I treat the defendants' motion to dismiss the claims against the Treasury as a motion for summary judgment. "If, on a motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). In determining whether to convert a Rule 12(b)(6) motion "into a motion for summary judgment, the essential inquiry is whether the appellant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." *Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Labs., Div. of/& Am. Home Prod. Corp.*, 850 F.2d 904, 911 (2d Cir. 1988) (internal quotation marks and alterations omitted). Here, the defendants have presented matters outside the pleadings in support of their motion. (*See* ECF No. 15-3; ECF No. 15-4.) Further, Mr. Antonucci cannot claim surprise at the conversion of the defendants' motion to dismiss his claims against the Treasury into a motion for summary judgment given that: (1) the defendants' motion requested summary judgment as an alternative remedy; (2) the motion to dismiss concerns the exact same set of facts as the motion for summary judgment—i.e., the hearing officer's decision; and (3) both parties submitted Local Rule 56 Statements agreeing as to the material facts (*see* Def.'s L.R. 56(a)1 Stmt. at ¶¶ 1-21; Pl.'s L.R. 56(a)1 Stmt. at ¶ 1-21 (admitting these factual allegations). *See Zynger v. Dep't of Homeland Sec.*, 615 F. Supp. 2d 50, 58 (E.D.N.Y. 2009) (concluding plaintiff had sufficient notice of possibility that defendants' motion to dismiss would be construed as motion for summary judgment given that defendants' motion requested summary judgment as an alternative form of relief and included a Local Rule 56.1 statement with its opening papers). Further, the defendants posted the administrative record on the docket (ECF No. 14), which "has been certified as true and accurate by [the hearing officer]." (*Id.*). The plaintiff does not dispute the administrative record.

2

Borrower was Robrich Associates, LLC" ("Robrich"). (*Id.*) Robrich's "Operating Company and co-borrower was Annexed Used Cars, Inc." (*Id.*) The loan from HLIB "was in the original principal amount of $430,000, and the SBA guaranteed 75% of that principal loan amount." (*Id.*) The loan was secured by a "Promissory Note, an Unconditional Guarantee and a Standby Creditor's Agreement," all of which were signed by Mr. Antonucci. (Def.'s L.R. 56(a)1 Stmt. at ¶¶ 2.)[2] The guarantee agreement provided as follows with respect to Mr. Antonucci's obligations under the loan:

> Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

(ECF No. 14, Administrative Record ("AR") at 46.) HLIB declared the loan in default on April 1, 2008. (Def.'s L.R. 56(a)1 Stmt. at ¶ 6.)

"On August 21, 2009, [HLIB] commenced a foreclosure action against [Robrich] in the State of Connecticut Superior Court" concerning the property that secured the loan. (Def.'s L.R. 56(a)1 Stmt. at ¶ 7; ECF No. 15-3 at 3 (case docket).). On December 11, 2009, HLIB filed a motion for judgment, and the Connecticut Superior Court entered a Judgment of Strict Foreclosure ten days later. (Def.'s L.R. Stmt. at ¶ 8; ECF No. 15-3 at 3) "The Judgment of Strict Foreclosure set a law day of February 22, 2010, at which time each equity owner would have an opportunity to redeem their respective interest in the subject property on successive days." (Def.'s L.R. Stmt. at ¶ 8.) On February 23, 2010, Robrich "filed a Chapter 11 bankruptcy

---

[2] Mr. Antonucci admits paragraphs one through twenty-one of the defendants' Local Rule 56(a) Statement. (*See* Pl.'s L.R. 56(a)2 Stmt. at ¶¶ 1 to 21 ("The Plaintiff Admits Paragraph 1[] through 21[] of the Defendants' Local Rule 56(a)(1) Statement . . . .").) I therefore cite only the defendants' Local Rule 56(a) Statement when relying upon those factual assertions.

petition," which "temporarily stayed the foreclosure action." (Def.'s L.R. Stmt. at ¶ 9.) HLIB "filed a motion to reset law days, and a second Judgment of Strict foreclosure was entered by the Connecticut Superior Court on June 15, 2010." (Def.'s L.R. 56(a)1 Stmt. at ¶ 10.)

"Over the next two years, from August, 2010 through June, 2012 the parties in the foreclosure action engaged in a motion practice whereby [HLIB] would obtain successive Judgments of Strict Foreclosure, and [Robrich] would file and be granted successive Motions to Open Judgment and Extend Law Day." (Def.'s L.R. 56(a)1 Stmt. at ¶ 11.) On April 6, 2012, HLIB "assigned to '147 & 157 Main Street, New Haven, LLC' a mortgage given by [Robrich] to secure the loan. The mortgage was dated June 15, 2007—coinciding with the execution dates of the Promissory Note, the Unconditional Guarantee and a Standby Creditor's Agreement." (Def.'s L.R. 56(a)1 Stmt. at ¶ 12.) On May 14, 2012, HLIB "successfully moved to substitute '147 & 157 Main Street, New Haven, LLC' as the plaintiff in the foreclosure action." (Def.'s L.R. 56(a)1 Stmt. at ¶ 13) On September 7, 2012, 147 & 157 Main Street, New Haven LLC ("147 Main Street") "conveyed title to the subject property to a third party, Annex Management, LLC, in consideration of a payment in the amount of" $275,000.[3] (Def.'s L.R. 56(a)1 Stmt. at ¶ 14.) "On September 24, 2012, [147 Main Street] filed [a] Motion for Deficiency Judgment in Connecticut Superior Court against [Robrich]. The Motion for Deficiency Judgment was the last entry on the Connecticut Superior Court's docket sheet." (Def.'s L.R. 56(a)1 Stmt. at ¶ 15.)

**B.     SBA Collection Action and Subsequent Appeal**

---

[3] The defendants' Local Rule 56(a) Statement lists the amount as $225,000. (*See* Def.'s L.R. 56(a)1 Stmt. at ¶ 14 (citing AR at 71-72).) The administrative record page they cite, however, demonstrates that the full amount of consideration provided for the property was $275,000. (*See* AR at 71.)

4

"SBA's records show that the net proceeds recovered from the sale of the subject property to Annex Management, LLC totaled $223,420.000, which were applied to the principal portion of the loan on September 11," 2012.[4] (Def.'s L.R. 56(a)1 Stmt. at ¶ 16.) "By letter dated January 13, 2016, the [Treasury] provided notice to Antonucci that the SBA had submitted his debt owed to SBA to Treasury to pursue an administrative wage garnishment against Antonucci's wages." (Def.'s L.R. 56(a)1 Stmt. at ¶ 17.) On February 1, 2016, "Antonucci executed a Hearing Request and returned it to Treasury." (Def.'s L.R. 56(a)1 Stmt. at ¶ 18.) In a subsequent letter to Treasury, "Antonucci raised two issues, the first concerning the calculation of the amount owed; and second, that no deficiency judgment was rendered in the underlying foreclosure case and the statues [sic] has expired as to all State and Federal Statutes to enforce the guaranty." (Def.'s L.R. 56(a)1 Stmt. at ¶ 20 (internal quotation marks and alterations omitted).)

The Hearing Officer issued her decision on June 5, 2017. (*See* Def.'s L.R. 56(a)1 Stmt. at ¶ 22[5]; ECF No. 14-5, Hearing Officer's Decision ("Decision") at 14.) "The Decision found

---

[4] The defendants' Local Rule 56(a) Statement avers that the $223,420.00 was applied to Mr. Antonucci's balance on September 11, 2015. (*See* Def.'s L.R. 56(a)1 Stmt. at ¶ 16 (citing AR at 54, 119).) The administrative record page they cite in support of that proposition, however, states that the $223,400 was applied to Mr. Antonucci's balance on September 11, *2012*. (*See* AR at 54, 119.)

[5] Although Mr. Antonucci does not admit the defendants' subsequent allegations, he also does not deny them. (*See* Pl.'s L.R. 56(a)2 Stmt. at ¶¶ 22-30 (listing alleged disputed issues of material fact).) I therefore deem these facts admitted. *See* D. Conn. L. R. 56(a)(3) ("[E]ach denial in an opponent's Local Rule 56(a)2 Statement . . . must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial. . . . Failure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming admitted certain facts that are supported by the evidence in accordance with Local Rule 56(a)1 . . . ."). In any event, the defendants' recounting of the hearing officers' decision is borne out by the administrative record, as I note in my citations to her decision throughout this paragraph.

5

that Antonucci's debt to SBA was enforceable by the SBA, and that the administrative wage garnishment action could proceed." (Def.'s L.R. 56(a)1 Stmt. at ¶ 22; Decision at 14). "The Decision addressed Antonucci's claim that the debt was unenforceable due to the lack of a deficiency judgment," noting that "'the failure of a lender to obtain a deficiency judgment against the borrower does not prevent the lender from thereafter pursuing other loan obligors, such as guarantors, for the balance due.'" (Def.'s L.R. 56(a)1 Stmt. at ¶ 22 (quoting Decision at 5).) "The Decision also distinguished Antonucci as a guarantor, finding that guarantors such as Antonucci are not proper parties to a claim seeking the foreclosure of a mortgage and their obligations are not limited by the extinguishment of the mortgagor's rights and obligations." (Def.'s L.R. 56(a)1 Stmt. at ¶ 22 (internal quotation marks omitted); Decision at 7-8). The Decision concluded that "[t]herefore, the guarantors could not be parties to the foreclosure as required by [Conn. Gen. Stat.] S 49-1." (Def.'s L.R. 56(a)1 Stmt. at ¶ 22 (internal quotation marks omitted); Decision at 11.). "The Decision also addressed Antonucci's general claim that a state or federal statute of limitation barred administrative collection," noting that "'the instant federal administrative wage garnishment proceeding is not-time barred by any statute of limitations.'" (Def.'s L.R. 56(a)1 Stmt. at ¶ 22 (quoting Decision at 12).) Finally, the Hearing Officer "reviewed the debt calculation of Antonucci's debt," and "found that the application of Antonucci's payments 'appears to be consistent with the terms of the Notice and Debtor has not provided any reason or evidence from which to conclude that payments should have been applied differently . . .'" (Def.'s L.R. 56(a)1 Stmt. at ¶ 22 (quoting Decision at 12).)

    Mr. Antonucci appealed the hearing officer's decision on June 10, 2017. (ECF No. 1.) The defendants filed the certified administrative record on the docket on February 8, 2018. (ECF

No. 14.) Mr. Antonucci does not contest the accuracy of the administrative record filed on the docket in any of his papers.

### C. Plaintiff's Complaint

Mr. Antonucci's complaint alleges that the Hearing Officer's "finding is in error and not based on the facts and evidence provided." (ECF No. 1 ("Complaint") at ¶ 14.) In particular, he claims that the Hearing Officer erred in declining to credit towards his obligation under the loan the value of the property set by the Connecticut Superior Court during foreclosure proceedings—$350,000—, as opposed to "the amount that the property was ultimately sold for post judgment." (*Id.* at ¶ 16.) Mr. Antonucci also contends "that upon foreclosure, the SBA or its predecessor/Assignor, failed to seek a deficiency judgment for any balance[] owed in the foreclosure action" and that, as a result, "the Plaintiff was not given the opportunity to argue the balance due on the debt, if any, after title to the property was transferred." (*Id.* at ¶ 18.) Finally, Mr. Antonucci "alleges that the SBA failed to provide any notice regarding outstanding balance (sic) due upon the Plaintiff (sic) in order to provide Plaintiff the opportunity to contest the debt and alleged costs and interest until the Plaintiff was notified by the [Treasury] on or about January 13, 2016 of its intent to initiate Administrative Wage Garnishment Proceedings." (*Id.* at ¶ 19.)

## II. Legal Standards

### A. Summary Judgment

Summary judgment is appropriate only when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In making that determination, a court must view the evidence in the light most favorable to the opposing party." *Tolan v. Cotton,* 134 S.Ct. 1861, 1866 (2014) (internal

quotation marks omitted). "A fact is material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted). The moving party bears the burden "of showing that no genuine factual dispute exists . . . , and in assessing the record to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences" in favor of the non-moving party. *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995). "Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists." *Jackson v. Nassau Cty. Bd. of Sup'rs*, 818 F. Supp. 509, 530 (E.D.N.Y. 1993). The non-moving party may not rely on the allegations of the complaint; he must point to admissible evidence warranting a trial. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 533 (2d Cir. 1993) (noting that a non-moving party may not rely "upon the mere allegations . . . [of his] pleading"). Finally, the "submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks omitted).

The defendants failed to provide Mr. Antonucci with a "Notice to Self-Represented Litigant Concerning Motion for Summary Judgment," as required by this Court's Local Rules. (*See* D. Conn. L.R. 56(b).) They instead provided only a "Notice to Self-Represented Litigant Concerning Motion to Dismiss." (*See* ECF No. 16.) The Second Circuit has held that "[a] district court must advise a *pro se* litigant as to the nature of summary judgment unless the moving party has provided the litigant with the requisite notice or the record makes clear that the litigant understood the nature and consequences of summary judgment." *United States v. U.S. Currency in the Sum of $9,100*, 18 F. App'x 47, 49 (2d Cir. 2001). The Second Circuit has reversed numerous

district court decisions in which it concluded that this requirement was not satisfied. *See, e.g.*, *id.*; *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 621 (2d Cir. 1999). Nonetheless, the Second Circuit has also held that this principle "should not be understood . . . to set down an unyielding rule prohibiting district courts from acting upon motions for summary judgment sought against *pro se* litigants in the absence of explanatory notice." *Sawyer v. Am. Fed'n of Gov't Employees, AFL-CIO*, 180 F.3d 31, 35 (2d Cir. 1999). Rather, "the issue in each case remains whether from all of the circumstances, including the papers filed by the *pro se* litigant, it is reasonably apparent that the litigant understood the nature of the adversary's summary judgment motion and the consequences of not properly opposing it." *Id.*

Here, there is ample evidence that Mr. Antonucci "understood the nature of the [defendants'] summary judgment motion and the consequences of not properly opposing it." First, he filed an opposition to the defendants' motion, along with his own Local Rule 56(a) Statement admitting various portions of the defendants' Local Rule 56(a) Statement. (*See* Pl.'s L.R. 56(a)2 Stmt. at ¶¶ 1-21.) Second, as noted previously, the defendants have filed a certified copy of the administrative record on the docket. (*See* ECF No. 14.) Since this is an administrative appeal, the merits of the defendants' motion will turn upon that record. *See* 5 U.S.C. § 706 (noting that in reviewing an agency decision under the Administrative Procedure Act, a "court shall review the whole record or those parts of it cited by a party"). Thus, Mr. Antonucci was not prejudiced by any lack of opportunity to buttress the summary judgment record. Finally, Mr. Antonucci does not appear to dispute any portion of the administrative record. Thus, given that his appeal rests upon that record, he does not raise any genuine issues of material fact in opposing the defendants' motion. As such, I conclude that the record demonstrates that Mr. Antonucci understood his

burden in opposing the defendants' summary judgment motion and that, in any event, the posting of the uncontested administrative record nullifies any potential prejudice to him.

### B. Review of Agency Decision

The Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* ("APA"), provides a reviewing court with the power to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ." 5 U.S.C. § 706(2)(A). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "A reviewing court may not itself weigh the evidence or substitute its judgment for that of the agency." *Islander E. Pipeline Co., LLC v. McCarthy*, 525 F.3d 141, 150 (2d Cir. 2008). Instead, "in deciding whether agency action is arbitrary and capricious, a court considers whether the agency 'relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Id.* (quoting *State Farm*, 463 U.S. at 43).

## IV. Discussion

### A. Challenge to the SBA's Decision

Mr. Antonucci makes three arguments in his opposition to the SBA's motion for summary judgment: (1) that the Hearing Office erred in applying the amount the property sold for rather than the valuation of his property from the foreclosure proceeding against his outstanding balance under the loan; (2) that the Hearing Officer should have at least credited the full amount the property sold for against the balance of the loan, rather than that amount less the

10

cost of sale; and (3) that because the SBA was entitled only to the portion of the loan it guaranteed—i.e., seventy-five percent of the full loan balance—, and because that portion amounted to less than the valuation of the property in the foreclosure proceeding, he owes nothing. (*See Generally* ECF No. 17.) He also made an argument in his complaint that the SBA failed to provide him "any notice regarding" his outstanding balance before referring his case to the Treasury for wage garnishment. (*See* Complaint at ¶ 19.) While Mr. Antonucci does not mention this argument in his opposition to the defendants' motion for summary judgment, I will nonetheless analyze it in my ruling given his *pro se* status. I address each of Mr. Antonucci's contentions in turn.

### 1. Superior Court's Valuation of the Property

Mr. Antonucci argues that the Hearing Officer erred in crediting him only for the net proceeds of the sale of his property rather than the property's value as set by the Superior Court during the foreclosure proceeding. (*See id.* at 5; AR at 84 (Superior Court document dated December 21, 2009 granting strict foreclosure of property and finding property value to be $350,000.00).) He makes three interlocking arguments in support of this contention: (1) the property was foreclosed upon and transferred to 147 Main Street after being valued at $350,000 by the Connecticut Superior Court; (2) 147 Main Street did not obtain a deficiency judgment against Robrich before selling the property; and (3) the *Rooker-Feldman* doctrine fortifies these claims. (ECF No. 17 at 5-12.)

The hearing officer addressed the second of these contentions at length in her decision. In response to Mr. Antonucci's contention regarding the lack of a deficiency judgment, she noted that "the failure of a lender to obtain a deficiency judgment against the borrower does not prevent the lender from thereafter pursuing other loan obligors, such as guarantors, for the

balance due." (*See* Decision at 5 (citing *JP Morgan Chase Bank, N.A. v. Winthrop Props, LLC*, 312 Conn. 662 (2014).) She then quoted the Connecticut Supreme court's decision in *JP Morgan* at length and, in particular, emphasized the following language used by the *JP Morgan* court: "Due to the separate and distinct liability of a guarantor, courts generally have recognized that, in the absence of a statute expressly pertaining to guarantors, such secondary obligors are not proper parties to a claim seeking the foreclosure of a mortgage and their obligations are not limited by the extinguishment of the mortgagor's rights and obligations." (Decision at 7-8 (emphasis deleted) (quoting *JP Morgan*, 312 Conn. at 677).) The Hearing Officer then noted as follows with respect to Mr. Antonucci's obligations:

> In the instant matter, the hearing record reflects that [HLIB] initiated a strict foreclosure action in the Superior Court of Connecticut, Judicial District for New Haven. There is no indication from the documents in the hearing record that a deficiency judgment was entered. If [Mr. Antonucci] had been the borrower of the Loan—and thus obligated to repay the Loan solely based upon the promissory note—the lack of a deficiency judgment would preclude further collection from [Mr. Antonucci] personally for the amounts remaining due on the Loan after the strict foreclosure and sale of the property. However, because [Mr. Antonucci] was and still is a guarantor of the Loan pursuant to an Unconditional Guarantee, under applicable Connecticut law, recovery may be sought from [Mr. Antonucci] for the balance of the Loan.

(Decision at 11.) The Hearing Officer's reasoning was on point. "When payment of a promissory note secured by a mortgage is further protected by a separate guarantee, . . . the mortgagee may pursue a claim against the guarantors to recover any of the unpaid debt of the mortgagor." *JP Morgan*, 312 Conn. at 675. As noted above, a guarantor's "obligations are not limited by the extinguishment of the mortgagor's rights and obligations." *Id.* at 677. Thus HLIB's failure to attain a deficiency judgment against Robrich, *the borrower* on the Loan, does not affect its ability to recoup the outstanding balance of the loan from him as *the guarantor* on the Loan. When HLIB sold the property for the amount listed above, it decreased the

12

outstanding loan balance by the amount of funds recouped from the sale.[6] (*See* AR at 119

(transcript of loan account crediting payment of $223,420.00 to the loan principal).) As the

guarantor on the loan, Mr. Antonucci was not entitled to offset his obligation by the Superior

Court's valuation of the property in the foreclosure proceeding. Rather, he was entitled to the

benefit of the proceeds attained from the sale of the property, because those proceeds reduced the

balance on the debt he had guaranteed. *See F.D.I.C. v. Fonte*, 48 Conn. App. 531, 543, 712 A.2d

416, 422 (1998) ("In calculating a deficiency judgment, a mortgagor is not entitled to a credit for

the fair market value of the property sold, but, rather, is entitled to a credit for the amount of the

sale proceeds."). His challenge on this issue is therefore without merit.[7]

### 2. Amount Applied to Loan Balance

Mr. Antonucci also argues that the hearing officer erred in concluding that the SBA's

application of $223,420.00 to the loan balance was proper when the property sold for $275,000.

The hearing officer explained her decision on this issue:

---

[6] At some point in time, the SBA purchased the loan from HLIB—giving it a basis to bring the wage garnishment action underlying this case. (ECF No. 1 at 8 (Hearing officer's decision noting that "[t]he Loan was referred to SBA, and which referred it to the [Treasury] . . . for collection . . . .").) In their Local Rule 56(a) Statement, the defendants note that "no exact date is provided" regarding when the loan was purchased by the SBA. (*See* Def.'s L.R. Stmt. at ¶ 2, n. 3.) They do note, however, that "SBA's records indicate an initial 'transaction date' of February 17, 2009, as to when SBA 'purchased' the Annexed Used Cars, Inc. account." (*Id.* (citing AR at 54, 119).) This does not appear to be the date of the SBA's purchase of the loan, however, as HLIB commenced foreclosure proceedings against Mr. Antonucci under the loan after that date. In any event, Mr. Antonucci does not contest that the SBA purchased the loan at some point in time before the garnishment action in this case.

[7] Mr. Antonucci's invocation of the *Rooker-Feldman* doctrine (*see* ECF No. 17 at 8) does not change this conclusion. Under the *Rooker-Feldman* doctrine, a federal district court does not possess the authority to reverse a state court judgment. *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005) (internal quotation marks omitted). Since Mr. Antonucci is not challenging the state court's judgment—and because that judgment relates to an obligation distinct from his obligation as guarantor—the doctrine is inapplicable.

13

> The applied sale proceeds, in the amount of $223,430.00, were applied to the principal balance of the loan; the amount of these proceeds is less than the <u>gross</u> sales . . . price of $275,000.00, as the applied amount reflects the <u>net</u> sales proceeds (i.e., the gross sales price less the cost of sale) *less other expenses relating to the foreclosure and sales process*.

(Decision at 12-13 (some emphases added).) Mr. Antonucci does not point to any evidence contradicting the hearing officer's conclusion in this regard or even argue that the SBA fabricated its expenses relating to the foreclosure and sales process. In any event, the figures cited by the hearing officer find support in the administrative record. (*See* AR at 54 (noting a payment toward the principal loan balance of $223,420.00; AR at 4 (noting property was sold for $275,000).) He also fails to present any reason why the SBA would be barred from deducting the costs of the sales process from the amount credited to the loan balance, and I note that Connecticut law endorses this calculation. *Fonte*, 48 Conn. App. at 543 ("The defendant is not entitled to have the entire sale price applied to reduce the debt. Rather, in arriving at the sale proceeds to be applied, the court determines and allows for the expenses incurred in connection with the sale."). As such, I conclude that Mr. Antonucci has failed to raise a genuine dispute of material fact concerning whether the hearing officer's rejection of this argument was arbitrary and capricious.

### 3. Amount of Loan Recoupable by SBA

Mr. Antonucci also contends that the SBA was obligated to guarantee only seventy-five percent of the loan value, and that seventy-five percent of the loan value is less than the $350,000 valuation of the collateral property—thereby resulting in the full satisfaction of his debt to the SBA. (*See* ECF No. 17 at 11.) The hearing officer addressed this contention at length in her decision. She noted that "the SBA guarantee on the Loan balance . . . has no impact on the Loan balance or on [Mr. Antonucci's] liability under the Unconditional Guarantee."

(Decision at 13.)  Rather, she concluded that "[t]he guarantee is . . . an agreement between SBA and the lender relating to SBA authorizing the extension of the loan and repurchasing the outstanding balance of the loan under certain circumstances." (*See id.* (citing 13 C.F.R. § 120.2(a)(2) ("If SBA agrees to guarantee (authorizes) a portion of the loan, the Lender funds and services the loan.  If the small business defaults on the loan, SBA's guarantee requires SBA to purchase its portion of the outstanding balance, upon demand by the Lender and subject to certain conditions.")).)  On this basis, the hearing officer concluded that the SBA guarantee merely "shifts the burden of final collection and loss on a defaulted loan from the lender to SBA, and does not alter the outstanding loan balance that may be collected from borrowers or guarantors." (*Id.* (citing *BancOhio Nat. Bank v. Small Bus. Admin.*, 820 F.2d 405, 1987 WL 37611 at *2 (6th Cir. 1987) ("Pursuant to the terms of the agreement between BancOhio and the SBA, if SBA purchases a loan they then stand in the shoes of the bank with all the security and guarantee provided running to them.").)

Mr. Antonucci has failed to present any flaws in the Hearing Officer's analysis of this issue.  The SBA guaranteed a portion of the loan provided by HLIB.  *See* 13 C.F.R. § 120.2(a)(1)(iii) (permitting SBA to provide a "guarantee loan . . . by which SBA guarantees a portion of a loan made by a Lender").  As the hearing officer noted, the "SBA's guarantee requires [the] SBA to purchase its portion of the outstanding balance" in the event of a default by the borrower.  *See* 13 C.F.R. § 120.2(a)(2).  The applicable regulations lay out the SBA's obligations in the event of a default:

> (1) . . . A Lender may demand in writing that SBA honor its guarantee if the Borrower is in default on any installment for more than 60 calendar days (or less if SBA agrees) and the default has not been cured, provided all business personal property securing the defaulted SBA loan has been liquidated. A Lender may also submit a request for purchase of a defaulted 7(a) loan when a Borrower files for federal bankruptcy once a period of at least 60 days has elapsed since the last full

> installment payment. If a Borrower cures a default before a Lender requests purchase by SBA, the Lender's right to request purchase on that default lapses. SBA considers liquidation of business personal property collateral to be completed when a Lender has exhausted all prudent and commercially reasonable efforts to collect upon these assets. In addition, SBA, in its sole discretion, may purchase the guaranteed portion of a loan at any time whether in default or not, with or without the request from a Lender.

13 C.F.R. § 120.520(a)(1). As this provision demonstrates, "the SBA does not act as a surety or guarantor for [a] small business borrower." *Rooster's Grill, Inc. v. Peoples Bank*, 965 F. Supp. 2d 770, 774 (S.D. Miss. 2013); (*see also* AR at 48 (Guarantee signed by Mr. Antonucci stating that "Guarantor's liability will continue even if SBA pays lender.").) Instead, the SBA acts as an extra assurance to the lender in the event of a default. Should the borrower default and the other conditions listed above be met, the SBA is on the hook to the lender for its guaranteed portion of the loan.

Once the SBA purchases an outstanding loan, it stands in the shoes of the original lender and may recoup the balance of the loan owed by the borrower. *See BancOhio Nat. Bank*, 1987 WL 37611 at *2 ("[I]f SBA purchases a loan they then stand in the shoes of the bank with all the security and guarantees originally provided running to them."); *Rooster's Grill, Inc. v. Peoples Bank*, 965 F. Supp. 2d 770, 774 (S.D. Miss. 2013) ("An SBA guarantee does not release the borrower from its indebtedness; it simply changes who enforces the debt."); *Wells Fargo Bank, N.A., v. Peirce*, No. 4:16-CV-98, 2016 WL 4734634, at *9 (S.D. Tex. Aug. 12, 2016*), report and recommendation adopted*, No. 4:16-CV-98, 2016 WL 4733162 (S.D. Tex. Sept. 7, 2016) (noting that should SBA "fulfill its loan guarantee to [the lender], then the SBA would be entitled to pursue the [borrowers] for the debt"). This principle aligns with the purposes of the SBA's loan program. "[T]he SBA's loan guarantee program is meant to protect *lenders* from the risk of

default, not to indemnify *borrowers*." *Regions Bank v. Gator Equip. Rentals, LLC*, No. CV 15-5084, 2016 WL 4429947, at *4 (E.D. La. Aug. 22, 2016).

In any event, as already shown above, Mr. Antonucci's argument that the amount he owes should be reduced by the $350,000 valuation of the property finds no support in the law or the facts here.

Finally, as also noted above, Mr. Antonucci does not argue in his objection that he is entitled to a reduction of his debt to the Treasury based upon the SBA's guarantee of only seventy-five percent of the loan. Indeed, he did not make that argument in his initial objection to the Treasury's first garnishment notice. (*See* AR at 13 (garnishment notice signed by Mr. Antonucci noting an objection to the "[e]xistence of the debt – I do not owe the debt" and not noting any objection to the "[a]mount of the debt").) Rather, he argues that he "does not owe [the] SBA a debt since [HLIB] took title to the collateral and did not obtain a deficiency judgment." (ECF No. 17 at 11.) This argument misses the mark for the reasons stated above. HLIB's failure to obtain a deficiency judgment against Mr. Antonucci does not affect his obligations under the loan as a guarantor.

I therefore conclude that Mr. Antonucci has failed to establish that the hearing officer's conclusion on this issue was arbitrary and capricious.

### 4. Notice

Mr. Antonucci also contends in his complaint (but not in his objection to the motion for summary judgment) that the "SBA failed to provide any notice regarding [the] outstanding balance due [on his loan]" before referring the loan to the Treasury, thereby divesting him of "the opportunity to contest the debt and alleged costs and interest" before then. (Complaint at ¶ 19.) The hearing officer addressed this contention in her decision, noting as follows:

> Pursuant to 13 C.F.R. § 140.11(e), written notice must be provided to a debtor's last known address at least thirty days before initiating garnishment and advise regarding the type and amount of the debt; the intent to collect the debt; and the debtor's rights—including the right to request a hearing before a hearing official. The Notice sent to [Mr. Antonucci] conforms to these requirements. In that regard, after the Notice was sent, [Mr. Antonucci] submitted a hearing request thereby prompting the instant written records hearing . . . . [Mr. Antonucci] submitted additional supporting documentation on November 18, 2016.

(Decision at 4.) The administrative record supports the hearing officer's conclusion. Mr. Antonucci was notified of the Treasury's wage garnishment action on January 13, 2016. (AR at 13-14.) The notice provided Mr. Antonucci with the amount of his debt, instructions on how to request a hearing contesting his debt, and a checklist form for objections to the debt. (*Id.*) As noted above, Mr. Antonucci checked off a box noting that he contested the "[e]xistence of the debt." (*Id.* at 13.) He provided a statement in support of this objection with the notice. (*Id.* at 15.) Further, Mr. Antonucci eventually submitted a hearing request contesting the garnishment action. (*See id.* at 1 (SBA letter to Mr. Antonucci dated October 28, 2016 noting that it had received his hearing request).) Since Mr. Antonucci does not provide any indication of exactly what sort of notice was lacking in his case and evidently used every right at his disposal to contest the garnishment action, I conclude that the hearing officer's determination that he received adequate notice was not arbitrary and capricious.

I therefore conclude that Mr. Antonucci has failed to establish a genuine dispute of material fact regarding whether the hearing officer's decision on this issue was arbitrary and capricious. I therefore grant the defendants' motion for summary judgment with respect to the SBA. Further, since Mr. Antonucci's claims against the Treasury rest upon the same objections to the hearing officer's decision (*see* ECF No. 17 at 4-5 ("The action against the Treasury is based on an appeal from a final agency decision for purposes of judicial review under the

[APA]."), I grant the defendants' motion for summary judgment with respect to the claims against the treasury as well.

**V.      Conclusion**

For the reasons set forth above, I grant the defendants' [15] motion for summary judgment. The Clerk is instructed to close this case.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:      Hartford, Connecticut
            September 30, 2018